IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) | CIVIL NO. 06-00119 SOM/BMK |
| Plaintiff, | ) ) ) | ORDER DENYING DEFENDANTS' MOTION REQUESTING THE COURT TO DECLINE DISCRETIONARY |
| vs. | ) ) | JURISDICTION OVER PLAINTIFF'S COMPLAINT FOR DECLARATORY |
| JOHN SCOTT and TAMARA SCOTT, | ) ) | JUDGMENT |
| Defendants. | ) ) | |

ORDER DENYING DEFENDANTS' MOTION REQUESTING THE COURT
TO DECLINE DISCRETIONARY JURISDICTION OVER PLAINTIFF'S
<u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

I.      <u>INTRODUCTION.</u>

Plaintiff State Farm and Casualty Company ("State Farm") filed the present action, seeking a declaration that it owes no duty under a homeowner's insurance policy and an umbrella insurance policy issued to Defendants John and Tamara Scott ("the Scotts"). The Scotts are currently being sued in state court ("the state court action") by Peter and Diane Kozial ("the Kozials"), who purchased the Scotts' Oahu home and subsequently discovered that it had allegedly undisclosed water damage. The Kozials filed the state court action against the Scotts regarding the sale, and State Farm is defending the Scotts subject to a reservation of rights. State Farm filed this declaratory action for a determination of whether it is obligated to defend and indemnify the Scotts in the state court action.

The Scotts now ask the court to decline jurisdiction over this action, arguing that Hawaii state courts can adjudicate State Farm's claims, Hawaii law regarding the interpretation of individual insurance policies is unsettled, State Farm has engaged in forum shopping, and this action constitutes a reactive declaratory action.  The court denies the motion and retains jurisdiction over the present action.

II.       LEGAL STANDARD.

It is undisputed that diversity jurisdiction exists, but relief is sought under the Declaratory Judgment Act, which embraces both constitutional and prudential concerns.  Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1222 (9th Cir. 1998). "A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution."  Id.  The lawsuit must also fulfill statutory jurisdictional prerequisites.  Id. "If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate."  Id.  "This determination is discretionary, for the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.'" Id. (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 250 (1952)).

III.     BACKGROUND.

In an agreement dated December 24, 2003, the Scotts agreed to sell and the Kozials agreed to purchase the Scotts' home, located at 3826 Poka Street, Honolulu, Hawaii 96816, for $2,392,500.00.  State Court Complaint ¶ 8.  That same day, the Scotts gave the Kozials a Seller's Real Property Disclosure Statement, stating the property had no "drainage, water infiltration, seepage, flooding, or grading problems."  Id. ¶ 10; Ex. 2 (attached to State Court Complaint at 2).  The sale of the home closed on February 17, 2004.  State Court Complaint ¶ 21.

After the Kozials moved into the residence, they discovered water damage that neither the Scotts nor the Scotts' real estate agent had disclosed to the Kozials.  Id. ¶¶ 14-15, 22.  The Kozials allege:

> on or about December 31, 2003 and/or January 1 and/or 2, heavy rains fell upon the Island of Oahu and in particular, upon the subject residence.  The rains, in turn, infiltrated, intruded and/or seeped into the subject residence, through the walls of the subject residence and perhaps elsewhere, causing the subject residence to become flooded and otherwise damaging the subject residence and its contents.

Id. ¶ 14.

On June 13, 2005, the Kozials sued the Scotts, the Scotts' real estate agent, and Coldwell Banker Pacific Properties, which employed the agent.  The Kozials asserted claims for:  (1) breach of contract; (2) breach of the implied

covenant of good faith and fair dealing; (3) tortious breach of contract; (4) negligence; (5) fraud and misrepresentation; (6) negligent misrepresentation; (7) violation of statutory duties; (8) respondeat superior liability; (9) unfair and deceptive trade practices; (10) civil conspiracy; (11) breach of implied warranty of habitability and fitness for use; and (12) negligent and intentional infliction of emotional distress. Id. ¶¶ 25-77. The Kozials prayed for special, general, and punitive damages, pre- and post-judgment interest, attorneys' fees, and costs.

At all times relevant, the Scotts were the named insureds under a State Farm Homeowner's Policy, No. 51-BR-1952-0, which applied to the Poka Street residence, and under a State Farm Personal Liability Umbrella Policy, No. 51-BR-1606-8. Federal Complaint ¶¶ 13, 18. State Farm agreed to defend the Scotts in the Kozials' state court lawsuit subject to a reservation of rights. On February 27, 2006, State Farm filed this declaratory action, seeking a determination as to whether it must defend and indemnify the Scotts in the state court action.

IV.   ANALYSIS.

Under the Declaratory Judgment Act, federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). District courts are under no compulsion to exercise its

4

jurisdiction.  Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942).  Rather, district courts are vested with discretion as to whether they will entertain declaratory judgment actions.  Wilton v. Seven Falls Co., 515 U.S. 277, 288-89 (1995).

A court's discretion to decline jurisdiction over a declaratory action "is not unfettered."  Dizol, 133 F.3d at 1223.  In determining whether to exercise or decline jurisdiction, courts consider several relevant factors.  In Brillhart, the Supreme Court cautioned district courts to "avoid needless determination of state law issues," to "discourage litigants from filing declaratory actions as a means of forum shopping," and to "avoid duplicative litigation."  Dizol, 133 F.3d at 1225 (citing Brillhart, 316 U.S. at 494).  "The Brillhart factors remain the philosophic touchstone for the district court."  Id.  In addition, the Ninth Circuit suggests that district courts consider the following additional factors:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.  In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

Id. at 1225 n.5 (citing Am. States Ins. Co. v. Kearns, 15 F.3d 142 (9th Cir. 1994) (J. Garth, concurring)).  In analyzing the

5

forgoing factors, a district court must proceed cautiously, balancing concerns of judicial administration, comity, and fairness to the litigants.  See Chamberlain v. Allstate Ins. Co., 931 F.3d 1361, 1367 (9th Cir. 1998).

The court now weighs each factor.

A.   Needless Determination of State Law Issues.

Regarding the factor in Brillhart cautioning district courts to avoid needless determinations of state law issues, the Scotts assert that the "Hawaii Supreme Court cases which have established many if not most of the general principles of insurance law in the State of Hawaii all involve commercial liability policies and not Homeowners Insurance policies or Personal Umbrella policies."  Motion at 11.  Thus, the Scotts argue, "The coverage and duty to defend have not been clearly defined by the major Hawaii Supreme Court cases in connection with a Homeowners and Personal Umbrella policies."  Reply at 4. State Farm responds that "Hawaii courts apply the same rules of construction in cases involving individual insureds and commercial insureds."  Opp. at 7, 13 (emphasis in original). This factor weighs in favor of retaining jurisdiction.

"The concern in this factor is with unsettled issues of state law, not fact-finding in the specific case."  Allstate Ins. Co. v. Davis, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006) (quoting Nat'l Chiropractic Mut. Ins. Co. v. Doe, 23 F. Supp. 2d 1109,

6

1118 (D. Alaska 1998)). "When state law is unclear, absent a strong countervailing federal interest, the federal court should not elbow its way to render what may be an uncertain and ephemeral interpretation of state law." Id. (citing Mitcheson v. Harris, 955 F.2d 235, 238 (4th Cir. 1992)) (internal quotation marks, ellipses points, and brackets omitted). In other words, if the applicable state law is uncertain, undetermined, or complex, a district court should be reluctant to entertain a declaratory judgment action if a state action is pending. See Chamberlain, 931 F.2d at 1367 ("The Court recognized the difficulty federal district courts would have in ruling on complex state law issues when it warned that 'scattered opinions of an intermediate appellate court of a State may convey only doubts and confusion to one inexpert in the law of that State and yet be entirely clear and consistent when placed in the mosaic of the whole law of that State.'" (citing Brillhart, 316 U.S. at 497)).

       The Scotts note that the present action "rest[s] upon the actual interpretation of the law in Hawaii as they [sic] relate to Homeowners and Personal Umbrella policies" and point to five Hawaii Supreme Court cases in support of their assertion that "coverage and duty to defend have not been clearly defined by the major Hawaii Supreme Court cases in connection with a Homeowners and Personal Umbrella policies." Motion at 10-11

(citing Dairy Rd. Partners v. Island Ins. Co., 92 Haw. 398, 992 P.2d 93 (Haw. 2000); Sentinel Ins. Co. v. First Ins. Co. of Haw., Ltd., 76 Haw. 277, 875 P.2d 894 (Haw. 1994); Sturla, Inc. v. Fireman's Fund Ins. Co., 67 Haw. 203, 684 P.2d 960 (Haw. 1984); First Ins. Co. of Haw., Inc. v. State, 66 Haw. 413, 665 P.2d 648 (Haw. 1983); Standard Oil Co. of Cal. v. Hawaiian Ins. & Guar. Co., 65 Haw. 521, 654 P.2d 1345 (Haw. 1982). The Scotts also argue that those cases "indicate a strong inclination under Hawaii law for protection of the insured in the commercial context" and that "Hawaii courts may show a similar if not greater presumption of coverage under Homeowner's and Personal Umbrella policies where individual citizens rather than commercial enterprises are involved." Motion at 11.

The court agrees that it must turn to Hawaii law regarding the interpretation of insurance policies. See Bell Lavalin, Inc. v. Simcoe & Erie Gen. Ins. Co., 61 F.3d 742, 745 (9th Cir. 1995) ("state law governs the interpretation of the insurance policy"). The court also agrees that the few cases cited by the Scotts address commercial insurance policies rather than individual policies. However, the court is unpersuaded that Hawaii law regarding the interpretation of individual insurance policies is unsettled, as Hawaii courts have routinely applied the same standard of insurance interpretation to both commercial and individual policies. See, e.g., Hawaiian Ins. & Guar. Co. v.

8

Chief Clerk of the First Circuit Court, 68 Haw. 336, 338-41, 713 P.2d 427, 429-31 (Haw. 1986) (case concerning the duty to defend under an individual homeowner's insurance policy); Fortune v. Wong, 68 Haw. 1, 4, 10-11, 702 P.2d 299, 302, 305-06 (Haw. 1985) (case concerning coverage under an individual homeowner's insurance policy); Crawley v. State Farm Mut. Auto. Ins. Co., 90 Haw. 478, 481, 482, 484, 487, 979 P.2d 74, 76, 78, 80, 83 (Haw. App. 1999) (case concerning coverage under an individual automobile insurance policy).

      At the hearing on this matter, the Scotts acknowledged the cases cited above, but argued that the law is nonetheless unsettled because Hawaii appellate courts have not addressed the precise factual scenario before this court--i.e., whether an insurer that issued an individual homeowner's policy and an individual umbrella policy to an insured has a duty to defend and indemnify the insured. In other words, the Scotts contend that, in coverage disputes, a district court should decline jurisdiction whenever the precise factual background of the case has not been the subject of a published Hawaii appellate court opinion. Were this court to decline jurisdiction for that reason alone, the court would rarely, if ever, exercise its jurisdiction, as the nature or terms of the policy at issue and the nature of the underlying action will rarely be identical to the facts of a published Hawaii case. Declining jurisdiction

under these circumstances would essentially preclude this court from exercising diversity jurisdiction over any coverage dispute. That is not the import of any governing statute or case. Because the Scotts have not established that insurance policy interpretation is unsettled or unclear under Hawaii law, this factor weighs in favor of exercising jurisdiction.

      B.    <u>Forum Shopping.</u>

The Scotts argue, "There is no evidence that State Farm has brought this action for purposes other than to obtain the advantage of a more favorable forum and to avoid a res judicata advantage over the Scotts." Motion at 13. The Scotts also contend that this federal action "was reactive to the filing of the Pretrial Statement in the underlying State Case to set the matter for trial." Motion at 13. This court questions the basis for the Scotts' assertion that this forum, which must apply state law, is "more favorable" to State Farm. A party might, for example, favor one forum over another simply because of familiarity with a forum or its procedures. In addition, as State Farm notes, "there is no pending state case in which coverage is to be decided." Opp. at 9. State Farm also argues that the Scotts' claim that the present action is reactive is based on "pure speculation." Opp. at 15-16. This factor weighs in favor of exercising jurisdiction.

An insurer is typically understood to be forum shopping when it "fil[es] a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." Am. Cas. Co. of Reading, Penn. v. Krieger, 181 F.3d 1113, 1119 (9th Cir. 1999) ("This factor usually is understood to favor discouraging an insurer from forum shopping, i.e., filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action."); see also Davis, 430 F. Supp. 2d at 1120–21 ("A party is typically understood to be forum shopping for 'filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action."); Nat'l Chiropractic Mut. Ins. Co., 23 F. Supp. 2d at 1118 ("Forum shopping would only exist if [the insured] had commenced a declaratory judgment proceeding in state court against [the insurer] under parallel state law and, perhaps concerned at some preliminary rulings by a state judge, [the insurer] had filed this federal action." (internal citation omitted)).

Improper forum shopping also encompasses "situations where the action is 'reactive' or 'defensive' in that the insurer files a claim in federal court after it has already been sued in state court by either the injured third party or the insured."

11

Davis, 430 F. Supp. 2d at 1121; see also Nat'l Chiropractic Mut. Ins. Co., 23 F. Supp. 2d at 1117 ("A 'reactive' or 'defensive' declaratory judgment action is typically a diversity federal action commenced by an insurer that has already been sued in state court, either by the injured third party or the insured."). Indeed, "federal courts should generally decline to entertain reactive declaratory actions." Dizol, 133 F.3d at 1225.

The Scotts present no evidence to support their claim that State Farm improperly forum shopped by filing this declaratory action. The Scotts concede that there is "no evidence" concerning State Farm's purpose in bringing this action in federal court. Motion at 13. Similarly, the Scotts rely on pure speculation in arguing that this action is a "reactive or defensive declaratory action."

Furthermore, State Farm is not a party to the state court action and, therefore, could not have raised the present coverage issues in that case. Even if State Farm wanted to raise the coverage issues in the state court action, any attempt by State Farm to intervene in that case would likely be barred, as Hawaii law disfavors the joinder of an insurer in a third-party tort action absent some contractual or statutory provision. See Olokele Sugar Co. v. McCabe, Hamilton & Renny Co., 53 Haw. 69, 71-72, 487 P.2d 769, 770-71 (Haw. 1971) (noting that "it would not be sound public policy to permit the insurer to be joined as

12

a defendant, in deference to what is believed to be a jury's tendency to find negligence or to augment the damages, if it thinks that an affluent institution such as an insurance company will bear the loss").  Therefore, if this court declines jurisdiction over this action, State Farm's only recourse would be to file a similar claim for declaratory relief in a separate state court action pursuant to Haw. Rev. Stat. § 632-1.  See Davis, 430 F. Supp. 2d at 1121.  However, "[d]eclining jurisdiction under these circumstances would deprive [State Farm] of its choice to litigate this matter in federal court, and undermine the federal interest in providing a neutral forum free from an appearance of favoritism against an out-of-state party."  See id.

The Scotts contend that "the alleged federal interest in providing a 'neutral' forum free from an appearance of favoritism or prejudice against an out of state party . . . rings hollow" in the present case because State Farm "has been licensed as an insurance company in the State of Hawaii at least since August 15, 1960, i.e. over 46 years and has been doing business in the State of Hawaii longer than the Scotts have ever lived in Hawaii."  Motion at 9.  The court is unpersuaded, given the Scotts' concession that State Farm is a "'foreign corporation' for diversity purposes" and that the purpose of diversity jurisdiction "is to provide 'a federal forum for out-of-state

13

litigants where they are free from prejudice in favor of a local litigant.'" See Tosco Corp. v. Cmtys. for a Better Env't, 236 F.3d 495, 502 (9th Cir. 2001); Motion at 9.  Accordingly, this factor weighs in favor of exercising jurisdiction.

      C.   Duplicative Litigation.

Regarding the third Brillhart factor, the Scotts do not present any argument as to whether issues presented in this federal action will be duplicative of issues presented in the state court action.  State Farm addresses this factor by asserting that "no threat of duplicative litigation [is] presented here" because "State Farm is not a party to the underlying suit" and because "coverage matters will not be resolved therein."  Opp. at 9.  This factor weighs in favor of exercising jurisdiction.

In Dizol, 133 F.3d at 1225, the Ninth Circuit noted, "The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief."  However, the court cautioned:  "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." Id.

As previously mentioned, State Farm is not a party to the state court action, it is unlikely that State Farm will be

14

allowed to intervene in that action to raise coverage issues, and insurance coverage is not an issue in the state court action. Therefore, there is no presumption favoring abstention.  See id. Because coverage is not an issue in the state court action, this factor weighs in favor of retaining jurisdiction.

        D.    Settle All Aspects of the Controversy.

As a matter of judicial economy, a district court should not entertain a declaratory action when the result would be to try a particular controversy by piecemeal, or to try particular issues without settling the entire controversy.  See Dizol, 133 F.3d at 1225-26.  While it is true that this declaratory action will not determine issues presented in the state court action, it will determine and finally settle the dispute between State Farm and the Scotts concerning insurance coverage.  A final judgment in this action would resolve all aspects of the coverage dispute.  Therefore, this factor weighs in favor of retaining jurisdiction.

        E.    Clarify Legal Relations at Issue.

The Scotts present no argument as to "whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue."  See Dizol, 133 F.3d at 1225 n.5.  On this point, State Farm contends, "Resolution of the issues will clarify the legal relations between the parties on the issue of

15

coverage." Opp. at 10. This factor weighs in favor of exercising jurisdiction.

"Where an insurer disputes its coverage obligations with regard to a third party's claim against the insured, declaratory relief is appropriate to clarify the legal relationship between the parties." Davis, 430 F. Supp. 2d at 1122 (citing Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 738 (2d Cir. 1992)). "The determination informs [the insurer] in a timely manner as to its obligations to defend and informs all parties of their ultimate burdens, which could assist settlement negotiations." Id.

A decision finally determining State Farm's duties may alleviate uncertainty over the parties' rights and duties and encourage the resolution of the state court action. Accordingly, this factor weighs in favor of retaining jurisdiction over this case.

    F.    Procedural Fencing and Res Judicata.

With respect to "whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage," the Scotts contend that "State Farm has not shown any evidence that this action was brought for purposes other than to obtain advantage of a more favorable forum and to avoid a res judicata advantage over the Scotts." Reply at 8. However, the Scotts present no evidence on

this point, and nothing in the record suggests that State Farm brought this action "merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage." This factor weighs in favor of exercising jurisdiction.

        G.    Entanglement Between the Federal and State Court Systems.

With respect to the issue of "whether the use of a declaratory action will result in entanglement between the federal and state court systems," the Scotts argue, as they did above, that the standard for interpreting individual insurance policies is unsettled under Hawaii law. Motion at 11. Thus, they assert that exercising jurisdiction "will only result in unnecessary entanglement between the federal and state court systems." Motion at 11. State Farm contends, "This action does not pose the potential for entanglement between the federal and state court systems, since it presents no novel issues of state law and does not require resolution of any matter at issue in the state court action." Opp. at 10. As discussed above, the Scotts have not established that Hawaii law regarding the interpretation of individual policies is unsettled or unclear. Additionally, coverage is not at issue in the state court action. Thus, there is no significant threat of entanglement between the federal and state court systems. This factor therefore weighs in favor or exercising jurisdiction.

       H.    <u>Convenience of the Parties and of Other Remedies.</u>

Although the Scotts do not expressly address "the convenience of the parties[] and the availability and relative convenience of other remedies," they argue that Hawaii courts have the power to entertain declaratory actions under Haw. Rev. Stat. § 632-1. State Farm posits that "dismissal would be inconvenient and unfair to State Farm, which has expended substantial resources in pretrial proceedings in this case and has already filed a motion for summary judgment." Opp. at 10.

Although the Scotts are correct in asserting that Hawaii state courts have the power to decide the issues presented in this case, neither party sought such a determination by any state court. The Scotts say that they "did not have an opportunity to bring the action into the Hawaii court for a determination," but they do not explain why they could not or did not seek a declaration in state court themselves regarding State Farm's duty to defend and indemnify. Because the Scotts provide no argument as to how it would be inconvenient for them were this court to exercise jurisdiction, and because this federal case has been pending for more than ten months and the parties have already filed dispositive pleadings in this court, this factor weighs in favor of exercising jurisdiction.

After considering each factor set forth in <u>Brillhart</u> and <u>Kearns</u>, the court retains jurisdiction over this declaratory

action.  The Scotts have not met their burden of showing that any of the factors tilts in their favor.  As there is "no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage," this court exercises its discretion to retain jurisdiction over this case.  See <u>Dizol</u>, 133 F.3d 1225.

V.   CONCLUSION.

In light of the foregoing, the court denies the Scotts' motion to decline jurisdiction.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 10, 2007



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

**<u>State Farm Fire & Casualty Company v. John Scott and Tamara Scott</u>, Civ. No. 06-00119 SOM/BMK; ORDER DENYING DEFENDANTS' MOTION REQUESTING THE COURT TO DECLINE DISCRETIONARY JURISDICTION OVER PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT.**