IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

STATE FARM FIRE & CASUALTY     )     CIVIL NO. 06-00119 SOM/BMK
COMPANY,                       )
                               )
          Plaintiff,           )
                               )     ORDER GRANTING PLAINTIFF'S
     vs.                       )     MOTION FOR SUMMARY JUDGMENT
                               )
JOHN SCOTT and TAMARA SCOTT,   )
                               )
          Defendants.          )
_____)

<u>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

I.        <u>INTRODUCTION.</u>

        Plaintiff State Farm and Casualty Company ("State

Farm") seeks a declaration that it owes no duty under a

homeowner's insurance policy and an umbrella insurance policy

with respect to a dispute between Defendants John and Tamara

Scott ("the Scotts") and Peter and Diane Kozial ("the Kozials").

The Scotts are currently being sued in state court ("the state

court action") by the Kozials, who purchased the Scotts' Oahu

home and subsequently discovered that it had allegedly

undisclosed water damage.  The Kozials filed the state court

action against the Scotts regarding the sale, and State Farm is

defending the Scotts subject to a reservation of rights.

        Before the court is State Farm's motion for summary

judgment.  State Farm argues that the Kozials' claims against the

Scotts are not covered by the Policies because they "arise from a

<u>contract</u> to sell the [Scotts'] home" and because "[c]overage for

all such contract-based claims is barred."  Motion at 11
(emphasis in original).  Alternatively, State Farm argues that
the Policies exclude coverage for property damage to the Scotts'
home while they owned it.  The court agrees with State Farm that
the Kozials' claims against the Scotts are not covered under the
Policies.  The court therefore grants State Farm's motion for
summary judgment.

II.      LEGAL STANDARD.

        Summary judgment shall be granted when

        the pleadings, depositions, answers to
        interrogatories, and admissions on file,
        together with the affidavits, if any, show
        that there is no genuine issue as to any
        material fact and that the moving party is
        entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr.,
383 F.3d 1018, 1024 (9th Cir. 2004); Addisu v. Fred Meyer, Inc.,
198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal
purposes of summary judgment is to identify and dispose of
factually unsupported claims and defenses.  Celotex Corp. v.
Catrett, 477 U.S. 317, 323-24 (1986).

        Summary judgment must be granted against a party that
fails to demonstrate facts to establish what will be an essential
element at trial.  See id. at 323.  A moving party without the
ultimate burden of persuasion at trial--usually, but not always,
the defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.

Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
(9th Cir. 2000).  The burden initially falls upon the moving
party to identify for the court "those portions of the materials
on file that it believes demonstrate the absence of any genuine
issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing
Celotex Corp., 477 U.S. at 323).

     "When the moving party has carried its burden under
Rule 56(c), its opponent must do more than simply show that there
is some metaphysical doubt as to the material facts."  Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)
(footnote omitted).  The nonmoving party may not rely on the mere
allegations in the pleadings and instead "must set forth specific
facts showing that there is a genuine issue for trial."  Porter,
383 F.3d at 1024 (quoting Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 256 (1986)).  "[I]f the factual context makes the
non-moving party's claim implausible, that party must come
forward with more persuasive evidence than would otherwise be
necessary to show that there is a genuine issue for trial."  Cal.
Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d
1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co.,
475 U.S. at 587).

III.        BACKGROUND.

        In an agreement dated December 24, 2003, the Scotts

agreed to sell and the Kozials agreed to purchase the Scotts'

home, located at 3826 Poka Street, Honolulu, Hawaii 96816, for

$2,392,500.00.  State Court Complaint ¶ 8.  That same day, the

Scotts gave the Kozials a Seller's Real Property Disclosure

Statement stating that the property had no "drainage, water

infiltration, seepage, flooding, or grading problems."  Id. ¶ 10;

Ex. 2 (attached to State Court Complaint at 2).  According to the

Kozials, they relied on that disclosure statement in purchasing

the home, and the sale closed on February 17, 2004.  State Court

Complaint ¶¶ 21, 43.

        After the Kozials moved into the residence, they

allegedly discovered water damage that neither the Scotts nor the

Scotts' real estate agent had disclosed to them.  Id. ¶¶ 14-15,

22.  The Kozials allege:

> on or about December 31, 2003 and/or January
> 1 and/or 2, heavy rains fell upon the Island
> of Oahu and in particular, upon the subject
> residence.  The rains, in turn, infiltrated,
> intruded and/or seeped into the subject
> residence, through the walls of the subject
> residence and perhaps elsewhere, causing the
> subject residence to become flooded and
> otherwise damaging the subject residence and
> its contents.

Id. ¶ 14.  The Kozials say that the Scotts and their real estate

agent "were aware of the aforesaid problem and damage caused by

the rain and, in fact, hired a water extraction company on an

4

emergency basis to extract and remove the infiltrated water from the subject residence."  Id. ¶¶ 15-16.

On June 13, 2005, the Kozials sued the Scotts, the Scotts' real estate agent, and Coldwell Banker Pacific Properties ("Coldwell Banker"), which employed the agent.  The Kozials assert claims against the Scotts for:  (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) tortious breach of contract; (4) negligence; (5) fraud and misrepresentation; (6) negligent misrepresentation; (7) violation of statutory duties; (8) breach of implied warranty of habitability and fitness for use; (9) intentional infliction of emotional distress ("IIED"); and (10) negligent infliction of emotional distress ("NIED").  Id. ¶¶ 25-77.  The Kozials also claim that "the Scotts, [their real estate agent,] and Coldwell Banker maliciously and with intent to injure [the Kozials], conspired together to defraud [the Kozials] into purchasing the subject residence."[1]  Id. ¶ 66.  The Kozials pray for special, general, and punitive damages, pre- and post-judgment interest, attorneys' fees, and costs.  State Farm agreed to defend the Scotts in the state court action subject to a reservation of rights.

---

[1] The Kozials also assert claims for unfair and deceptive trade practices and respondeat superior liability against the real estate agent and Coldwell Banker.  As these claims (Counts VIII and IX) are not asserted against the Scotts, they are not before the court in this declaratory action.

At all times relevant, the Scotts were the named insureds under a State Farm Homeowner's Policy, No. 51-BR-1952-0 ("Homeowner's Policy"), which insured the Poka Street residence, and under a State Farm Personal Liability Umbrella Policy, No. 51-BR-1606-8 ("Umbrella Policy").  Federal Complaint ¶¶ 13, 18. The Homeowner's Policy provides in pertinent part:

> If a claim is made or a suit is brought against **an insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
>
> 1.   pay up to our limit of liability for the damages for which the **insured** is legally liable; and
>
> 2.   provide a defense at our expense by counsel of our choice.

Ex. A (attached to Motion) at 19 (Section II – Liability Coverages).  The Policy expressly excludes from coverage "**property damage** . . . which is either expected or intended by the **insured**; or . . . which is the result of willful and malicious acts of the **insured**" and "**property damage** to the property currently owned by any insured."  Ex. A (attached to Motion) at 20-21 (Section II – Exclusions).

The Umbrella Policy provides:  "If you are legally obligated to pay damages for a **loss**, we will pay your **net loss** minus the **retained limit**."  Ex. A (attached to Opp.) at 9 (Coverages).  The Policy also states:  "When the claim or suit is

covered by this policy, but not covered by any other policy available to you . . . we will defend the suit against you." Ex. A (attached to Opp.) at 9 (Coverages). The Policy excludes from coverage: (1) property damage that "is either expected or intended by you"; (2) property damage "to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed"; and (3) property damage to "your own property." Ex. A (attached to Opp.) at 10 (Exclusions).

IV.      ANALYSIS.

        A.   Each of the Kozials' Claims is Based on the
             Scotts' Alleged Nondisclosure.

        The parties agree that the Policies provide coverage for bodily injury and property damage caused by an "occurrence" or "loss," both of which are defined as "an accident, including exposure to conditions." However, the parties disagree on what action by the Scotts, if any, constitutes the "accident" or wrongdoing that serves as the basis for the Kozials' claims. The Scotts argue that "subsequent flooding" is the accident at issue. Opp. at 9 ("The relevant 'accident' is factually based upon the alleged subsequent 'flooding' from a storm."). State Farm contends that the wrongdoing alleged in each claim is "the Scotts' alleged failure to disclose a defective condition of their home, not the flooding of the property." Reply at 2. The court agrees with State Farm that each of the Kozials' claims is based on the Scotts' alleged nondisclosure of water damage.

7

"Hawaii adheres to the 'complaint allegation rule.'"
<u>Burlington Ins. Co. v. Oceanic Design & Constr., Inc.</u>, 383 F.3d
940, 944 (9th Cir. 2004) (citing <u>Pancakes of Hawaii, Inc. v.
Pomare Props. Corp.</u>, 85 Haw. 286, 994 P.2d 83 (Haw. Ct. App.
1997)).  In that regard,

> The focus is on the alleged claims and facts.
> The duty to defend "is limited to situations
> where the pleadings have alleged claims for
> relief which fall within the terms for
> coverage of the insurance contract.  'Where
> pleadings fail to allege any basis for
> recovery within the coverage clause, the
> insurer has no obligation to defend.'"

<u>Id.</u> at 944-45 (citing <u>Hawaiian Holiday Macadamia Nut Co. v.
Indus. Indem. Co.</u>, 76 Haw. 166, 872 P.2d 230)).

The "subsequent flooding" to which the Scotts refer
occurred after the sale closed and the Kozials moved into the
residence.  In the state court complaint, the Kozials allege,
"Subsequent to the closing of the sale and after they had moved
into the subject residence, [the Kozials] discovered <u>during the
next rain</u> the water infiltration/intrusion/seepage/flooding
problem."  State Court Complaint ¶ 22 (emphasis added).  The
complaint does not allege that the home was damaged by that rain,
and none of the claims is based on damages that resulted from
that rainfall.

Moreover, under the Homeowner's Policy, an "occurrence"
must result in property damage "during the policy period."  Ex. A
(attached to Motion) at 6 (Definitions).  Property damage, if

any, caused by rain that fell <u>after</u> the Kozials moved into the
home could not have occurred "during the policy period," as the
sale had already closed and the Homeowner's Policy was no longer
in effect.  <u>See</u>, <u>e.g.</u>, Declaration of John Scott (1/4/2007)
("Scott Declaration") ¶ 10 (declaring that the Homeowner's Policy
was in effect "until the closing date for the sale of our
residence").  Accordingly, the Scotts' argument that the Kozials'
claims are based on the post-sale rainfall avails them nothing in
terms of insurance coverage.

          The Kozials' complaint makes clear that each of the
eleven claims asserted against the Scotts is based on the Scotts'
failure to disclose.[2]  Count I alleges that the Scotts "breached
the DROA" by failing to tender a home "free from any water
infiltration/intrusion/seepage/flooding problem."  State Court
Complaint ¶ 28.  Count II alleges that the Scotts breached the
implied covenant of good faith and fair dealing by failing to
tender a home "free from any water infiltration/intrusion/
seepage/flooding problem."  <u>Id.</u> ¶ 32.  Count III, which alleges
tortious breach of contract, is, in turn, based on the
allegations in Counts I and II.  <u>Id.</u> ¶ 35.

_____

     [2] The Scotts argue that they <u>did</u> disclose the water damage
to the Kozials and that, therefore, a dispute exists as to the
alleged nondisclosure.  However, the court must focus on the
allegations in the state court complaint, not on factual disputes
the Scotts raised in the underlying action.  <u>See</u> <u>Burlington Ins.</u>
<u>Co.</u>, 383 F.3d at 944 (citing <u>Hawaiian Holiday Macadamia Nut Co.</u>,
76 Haw. 169, 872 F.2d at 223); Opp. at 11-12.

Count IV alleges negligence, contending that the Scotts breached their duty "to timely prepare and submit . . . an amended disclosure statement to [the Kozials]." _Id._ ¶ 38. Count V alleges fraud and misrepresentation based on the Scotts' alleged failure "to timely prepare and submit . . . an amended disclosure statement to [the Kozials]," thereby causing the Kozials to rely on the original disclosure. _Id._ ¶ 43. Count VI, alleging negligent misrepresentation, similarly states that the Scotts "failed, refused and/or neglected to timely prepare and submit . . . an amended disclosure statement." _Id._ ¶ 49. Count VII, alleging a violation of Haw. Rev. Stat. § 508D-13, says that the Scotts neglected to "provide an amended disclosure statement to [the Kozials] disclosing the material fact within ten (10) calendar days after the seller's discovery of such information." _Id._ ¶ 54. Count X alleges a civil conspiracy by the Scotts with their agent and Coldwell Banker "to defraud [the Kozials] into purchasing the subject residence . . . by failing and refusing to timely prepare and submit . . . an amended disclosure statement." _Id._ ¶ 66. Count XI alleges breach of implied warranty of habitability and fitness for use, arguing that certain portions of the home are uninhabitable because of the undisclosed water damage. _See id._ ¶¶ 68-71. Counts XII and XIII allege IIED and NIED, respectively, arising from the Scotts' alleged nondisclosure. _See id._ ¶¶ 72-77.

10

At the hearing on the present motion, the court asked counsel for the Scotts to point out any language or paragraph in the state court complaint indicating that any of the Kozials' claims was <u>not</u> based on the nondisclosure.  Counsel pointed only to paragraphs 49 and 69 of the complaint.  Paragraph 49 is part of Count VI, which alleges negligent misrepresentation and states that the Scotts "caused [the Kozials] to rely upon the original [Disclosure] Statement which unequivocally stated and represented to [the Kozials] that the subject residence did not have any drainage, water infiltration, seepage, flooding or grading problems."  State Court Complaint ¶ 49.  In that paragraph, the Kozials clearly allege that the nondisclosure caused them to rely detrimentally on the original disclosure statement.  Paragraph 69 is part of Count XI, which alleges breach of implied warranty of habitability and fitness for use and states:  "As a result of the water infiltration/intrusion/seepage/flooding problem, [the Kozials] have been prevented from and unable to use certain portions of the subject residence because it is not inhabitable."  State Court Complaint ¶ 69.  As with paragraph 49, the Kozials' claim in this paragraph clearly states that the residence is uninhabitable because of the water problem, which the Scotts allegedly failed to disclose.  The court is unpersuaded that either paragraph indicates that Count VI or Count XI is not based on the nondisclosure.

11

Each of the Kozials' claims is based on the Scotts' alleged nondisclosure.  The court now turns to the issue of whether any of the nondisclosure claims may trigger State Farm's duty to defend or indemnify.

B.   None of the Kozials' Claims Involves An "Accident."

The court agrees with State Farm that none of the underlying claims is covered because "all arise from a contract to sell the insureds' home."[3]  See Motion at 11 (emphases in original).

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts.  Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38, 42 (Haw. 1994).  Insurance policies must be read as a whole and construed in accordance with the plain meaning of its terms,

---

[3] In response, the Scotts distinguish cases that State Farm relies on, arguing that they "involve issues as it relates to commercial liability coverage and Hawaii State Court has not addressed this issue as it relates to consumers under Homeowners and Personal Liability insurance."  Opp. at 8.  The Scotts presented this precise argument in their motion asking the court to decline jurisdiction over this declaratory action.  In denying that motion, the court said it was "unpersuaded that Hawaii law regarding the interpretation of individual insurance policies is unsettled, as Hawaii courts have routinely applied the same standard of insurance interpretation to both commercial and individual policies."  Order Denying Defendants' Motion Requesting the Court to Decline Discretionary Jurisdiction Over Plaintiff's Complaint for Declaratory Judgment (1/10/2007) at 8-9.  For the reasons discussed in that order, the court again rejects the argument that interpretation of insurance policies depends on whether the insured is an individual or a business.

unless it appears that a different meaning is intended.  Id. at 121, 883 P.2d at 42; First Ins. Co. of Haw. v. State, 66 Haw. 413, 423, 665 P.2d 648, 655 (Haw. 1983); see also Haw. Rev. Stat. § 431:10-237 (1993) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.").  Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguities must be resolved against the insurer.  Put another way, the rule is that insurance policies are construed in accordance with the reasonable expectations of a layperson.  Dawes, 77 Haw. at 131, 883 P.2d at 42.

The burden is on the insured to establish coverage under an insurance policy.  See Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (Haw. 1994).  The insurer has the burden of establishing the applicability of an exclusion.  See id. at 297, 875 P.2d at 914.

The obligation to defend an insured is broader than the duty to pay claims.  Id. at 287, 875 P.2d at 904.  The duty to defend "arises wherever there is the mere potential for coverage."  Id. (emphasis in original).  The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion."  Dairy Road Partners v. Island

13

<u>Ins. Co.</u>, 92 Haw. 398, 413, 992 P.2d 93, 108 (Haw. 2000) (citation omitted).

     The Homeowner's Policy provides coverage for the Kozials' claims against the Scotts only if they are "for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence** . . . ."  Ex. A (attached to Motion) at 19 (Section II – Liability Coverages). "Occurrence" is defined in the Policy as:

> an accident, including exposure to conditions, which results in
>
> a.   **bodily injury**; or
>
> b.   **property damage**;
>
> during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

Ex. A (attached to Motion) at 6 (Definitions).

     Similarly, the Umbrella Policy provides coverage for the Kozials' claims only if they are "for damages for a **loss**." Ex. A (attached to Opp.) at 9 (Coverages).  "Loss" is defined in the Policy as "an accident, including injurious exposure to conditions, which results in **bodily injury** or **property damage** during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one **loss** . . . ." Ex. A (attached to Opp.) at 2 (Definitions).

14

In sum, the Kozials' claims are covered by the Policies so long as they are for damages caused by an "occurrence" or "loss"--i.e., caused by an "accident" that resulted in "bodily injury" or "property damage."

The Hawaii Supreme Court has previously addressed what constitutes an "accident" under an insurance policy with definitions similar to those in the Policies before this court. In Hawaiian Holiday Macadamia Nut Co., 76 Haw. at 170, 872 P.2d at 234, the plaintiffs filed suit against an insured, alleging that the insured had "planted fewer trees than the parties had agreed to pursuant to the contract, purposely planted ungrafted trees and immature seedlings contrary to the contract, and planted the seedlings and the grass simultaneously, again contrary to the contract."  The issue before the Hawaii Supreme Court was whether the alleged damage was caused by an "occurrence," which the applicable insurance policy defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  Id. at 234-35, 872 P.2d at 170-71.  The court noted that it had previously addressed what constitutes an "accident": "[I]n order for the insurer to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable

result of the insured's own intentional acts or omissions." Id.
at 170, 872 P.2d at 234.

The Kozials' claims for fraud and misrepresentation
(Count V), civil conspiracy (Count X), and IIED (Count XII)
allege that the Scotts intentionally failed to disclose the water
damage. See State Court Complaint ¶¶ 42-47, 65-67, 72-74. As
any injury caused by this intentional act would be "the expected
or reasonably foreseeable result of the insured's own intentional
acts or omissions," the intentional nondisclosure alleged in
these counts does not constitute an "accident" and is thus not an
"occurrence" or "loss" under Hawaii insurance law. See Hawaiian
Holiday Macadamia Nut Co., 76 Haw. at 170, 872 P.2d at 234.
Therefore, these claims are not covered by the Policies.

Regarding the Kozials' remaining contract and contract-
related tort claims, the court relies on the Ninth Circuit's
decision in Burlington, 383 F.3d at 946-48. In that case, the
Ninth Circuit, applying Hawaii law, considered the definition of
"accident" stated in Hawaiian Holiday Macadamia Nut Co. in
determining that Burlington Insurance Company ("Burlington") owed
no duty to defend Oceanic Design and Construction, Inc.
("Oceanic"), against contract and contract-related tort claims.
Oceanic was a named insured under a commercial general liability
insurance policy issued by Burlington and had contracted to build
a single-family residence for Jeanette C. Chae, Susan K. Woo, and

16

Diana Han (collectively, "the homeowners").  <u>Id.</u> at 943.  After construction was completed, the homeowners refused to pay Oceanic because the construction was not to their satisfaction.  <u>Id.</u> Oceanic brought suit against the homeowners in Hawaii state court, alleging that they had breached the contract by failing to pay for the construction.  <u>Id.</u>  The homeowners filed a counterclaim against Oceanic, asserting claims for, among other things, negligent breach of contract and NIED.  <u>Id.</u>  Burlington agreed to defend Oceanic subject to a reservation of rights and filed a federal action seeking a declaration that it owed no duty to defend or indemnify Oceanic.  <u>Id.</u>  The district court granted summary judgment in favor of Burlington, concluding that the homeowners' claims against Oceanic were not covered by the insurance policy.  <u>Id.</u> at 944.  Oceanic timely appealed.  <u>Id.</u>

On appeal, the Ninth Circuit noted that the insurance policy "cover[ed] claims for liability for 'bodily injury' or 'property damage' if 'caused by an occurrence'" and that the policy "defined 'occurrence' as 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'"  <u>Id.</u> at 943, 945.  Applying the Hawaii Supreme Court's definition of "accident," the Ninth Circuit concluded that the homeowners' claim for negligent breach of contract was not covered by the policy, reasoning:

> In Hawaii, an occurrence "cannot be the
> expected or reasonably foreseeable result of

the insured's own intentional acts or
omissions."  If Oceanic breached its
contractual duty by constructing a
substandard home, then facing a lawsuit for
that breach is a reasonably foreseeable
result.

Id. at 948.

Regarding the homeowners' claim for NIED, the Ninth
Circuit noted that the district court had "concluded that the
emotional distress claim did not trigger the duty to defend
because it was a contract-based tort claim which arose only out
of the contractual relationship between Oceanic and the
homeowners."  Id. at 953.  The Ninth Circuit agreed, stating,
"[U]nder the given facts of this case, but for the contractual
relationship between Oceanic and the homeowners, the homeowners'
would not have a claim for [NIED].  Accordingly, the homeowners'
emotional distress claim cannot be read to constitute a covered
occurrence under the policy at issue."  Id. at 955.  The court
also noted that "our holding is consistent with the line of cases
from the District of Hawaii that hold that contract and contract-
based tort claims are not within the scope of CGL policies under
Hawaii law."  Id. at 949 (citing CIM Ins. Corp. v. Midpac Auto
Ctr., Inc., 108 F. Supp. 2d 1092 (D. Haw. 2000); CIM Ins. Corp.
v. Masamitsu, 74 F. Supp. 2d 975 (D. Haw. 1999); WDC Venture v.
Hartford Accident & Indem. Co., 938 F. Supp. 671 (D. Haw. 1996)).

As noted by the Ninth Circuit in Burlington, the
district court in WDC Venture, 938 F. Supp. at 677-78, similarly

18

held that contract and contract-based tort claims are not covered under Hawaii insurance law.  In WDC Venture, merchants and food providers doing business in the International Market Place had filed two lawsuits against WDC Venture, alleging claims for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, negligence, misrepresentation, breach of the covenant of quiet enjoyment, violation of the Racketeer Influenced and Corrupt Organizations Act, and constructive or retaliatory eviction.  Id. at 673.  WDC Venture settled both actions.  Id.  Insured under a policy issued by Westchester Surplus Lines Insurance Company ("Westchester"), WDC Venture sought declaratory relief in federal court regarding Westchester's duty to defend and indemnify.  Id. at 673-74.

Westchester moved for summary judgment, arguing that "it is not liable under the Policy for contract-based claims," which Westchester contended "were derivative of the contractual relationship between WDC and the tenants and are therefore outside the scope of Policy coverage."  Id. at 677.  The court noted that "there are no cases in Hawaii that are directly on point regarding the issue of insurance recovery for contract-based claims," but "conclude[d] that the Hawaii Supreme Court would follow the reasoning set forth in [Stanford Ranch v. Maryland Casualty Co., 89 F.3d 618, 625-26 (9th Cir. 1996)]," which "held that the underlying lawsuits (which alleged claims

based on breach of contract, negligent and intentional misrepresentation, and nondisclosure) depended on the existence of a contract and thus were not covered under the policies."  Id. at 678-79.

The court also concluded that "policy coverage of such contractual-based allegations would be contrary to public policy."  Id. at 678-79 ("There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions, even if, perhaps, the coverage of the policy has been expanded to cover other non-bodily injuries that sounded in tort." (emphasis in original)).  Because the court found that "WDC seeks recovery here for tort and contract claims that arise from the contractual relationship," the court concluded that the underlying claims were not covered by the policy.  Id. at 679 (emphasis in original).

Like the underlying claims in Burlington and WDC Venture, the Kozials' claims against the Scotts, including those phrased as tort claims, arose solely because of a contractual relationship with the Scotts.  By signing the Deposit Receipt Offer and Acceptance, the Scotts agreed to "provide an amended disclosure statement . . . to [the Kozials]" if they discovered

20

any "information which was not previously disclosed or which makes any statement in the disclosure statement inaccurate." Ex. 1 (attached to State Court Complaint) at ¶ C-45. But for this contractual relationship, the Kozials would have no basis for seeking recovery for the alleged nondisclosure. Because each claim is based on the nondisclosure, none of the Kozials' claims is covered by either Policy. See Burlington, 383 F.3d at 955 (concluding that claims for NIED were not covered by the policy because, "under the given facts of this case, 'but for the contractual relationship between Oceanic and the homeowners, the homeowners would not have a claim for [NIED]'"); WDC Venture, 938 F. Supp. at 679 ("Since WDC seeks recovery here for tort and contract claims that arise from the contractual relationship, the court finds that the underlying lawsuits are outside the scope of policy coverage in this case."). State Farm has no duty to defend or indemnify the Scotts in the state court action. See Dairy Road Partners, 92 Haw. at 413, 992 P.2d at 108; Sentinel Ins. Co., 76 Haw. at 287, 875 P.2d at 904.

   C. No "Accident" Resulted in Covered "Property
     Damage," "Bodily Injury," or "Emotional Distress."

   Even if the basis of the Kozials' claims--i.e., the nondisclosure--did constitute an "accident" under the Policies, there would still be no coverage for the claims, because the nondisclosure did not result in any covered damage or injury. The Policies have a very specific definition of "property damage"

21

that they cover.  Ex. A (attached to Motion) at 6 (Definitions) (defining "occurrence" as "an accident . . . which results in . . . **property damage**"); Ex. A (attached to Opp.) at 2 (Definitions) (defining "loss" as "an accident . . . which results in . . . **property damage**").  The Homeowner's Policy defines property damage as "physical damage to or destruction of tangible property, including loss of use of this property."  Ex. A (attached to Motion) at 6 (Definitions).  The Umbrella Policy similarly defines property damage as "physical injury to or destruction of tangible property.  This includes the loss of use caused by the injury or destruction."  Ex. A (attached to Opp.) at 8 (Definitions).

Because Hawaii appellate courts have not addressed whether the nondisclosure of real property defects is an occurrence or loss resulting in property damage, this court "must use its best judgment to predict how the Hawaii Supreme Court would decide the issue."  Burlington Ins. Co., 383 F.3d at 944.  In so doing, this court "may be aided by looking to well-reasoned decisions from other jurisdictions."  Id.

One such case is Safeco Ins. Co. of Am. v. Andrews, 915 F.3d 500, 502 (9th Cir. 1990), in which the Ninth Circuit, relying on California law, addressed whether a seller's nondisclosure of real property resulted in property damage.  After the sale of property closed, the buyer brought suit against

the seller for, among other things, "negligent failure to inspect the property and inform [the buyer] of certain alleged defects in the [property]." Id. at 501. Specifically, the buyer was concerned about "unstable, shifting and moving earth," inadequate electrical wiring, defective plumbing, and water damage. Id. The seller's homeowner's insurer defended the seller subject to a reservation of rights. Id.

The insurer sought declaratory relief regarding its duty to defend and indemnify the seller, arguing that the underlying lawsuit did not "allege any 'property damage' within the meaning of the policy nor any 'occurrence' within the meaning of the policy.'" Id. The policy defined "property damage" as "physical injury to or destruction of tangible property, including loss of use of this property" and defined "occurrence" as "an accident, including exposure to conditions which results, during the policy period, in bodily injury or property damage." Id. at 502. After the district court granted summary judgment in favor of the insured on the duty to defend, the insurer appealed. Id. at 501. On appeal, the Ninth Circuit concluded that the underlying claims were not covered under the policy, reasoning:

> [The buyer's] claims do not expose [the
> seller] to liability for any damage to
> tangible property, but rather for
> economic loss resulting from [the seller's] alleged
> failure to discover and disclose facts
> relevant to the property's value and
> desirability. Such harm is outside the scope
> of the policy. See Allstate Insurance Co. v.

> Miller, 743 F. Supp. 723 (N.D. Cal. 1990).
> Although the defective condition of the
> property is an element of [the buyer's]
> claims, the defects cannot, even when
> interpreting the policy broadly, be
> considered the cause of [the buyer's]
> damages.  The cause of the damage was [the
> seller's] alleged misrepresentations, which
> are not an "occurrence" or a "peril insured
> against" under the terms of the policy.
> There is, therefore, no potential for
> liability that arguably comes within the
> scope of the insurance coverage provided by
> [the insurer].

Id. at 502.

Similarly, in State Farm Fire and Casualty Co. v.

Brewer, 914 F. Supp. 140, 140 (S.D. Miss. 1996), buyers

contracted to purchase a home that the sellers represented to be

"free of termite damage."  After moving into the home, the buyers

learned that it "was in fact infested with termites."  Id. at

141.  The buyers sued the sellers in state court for negligent

and intentional misrepresentation, fraud, and recision.  Id.

After the sellers' homeowner's insurer brought a federal action

seeking declaratory relief, the federal court concluded that it

had no duty to defend or indemnify the sellers in the state court

action.  The court reasoned:

> It is the judgment of this Court that
> the underlying state court action does not
> involve a claim for property damage within
> the meaning of the policy at issue.  Rather,
> the [buyers'] claims sound in negligent and
> intentional misrepresentation and fraud. The
> damages which stem from such actions are
> pecuniary by their very nature.  While it is
> true that the termite damage is clearly

24

> property damage, it is not damage for which
> [the sellers] are legally liable.  The
> alleged misrepresentation of [the sellers]
> did not cause property damage.  The termites
> caused the property damage.
>
> There is a fundamental problem with [the
> sellers'] position.  There is no proximate
> cause between the alleged misrepresentation
> which forms the basis for the underlying suit
> and the termite damage.  The termite damage
> occurred prior to the alleged
> misrepresentation.  If the termite damage had
> not already occurred, there could not have
> been a misrepresentation.  The damage from
> the misrepresentation could not be the
> termite damage which had already occurred.

Id. at 142-43.

Other courts are in accord with the rulings in Safeco

Insurance Co. of America and Brewer.  See, e.g., Allstate Ins.

Co. v. Chaney, 804 F. Supp. 1219, 1222 (N.D. Cal. 1992) ("Even if

there was an occurrence under the policy--which there clearly was

not--the type of damages available for negligent

misrepresentation and negligence are not covered under the

policy.  Allstate correctly points out that the policy at issue

provides coverage only for bodily injury or property damages;

however, [the seller's] recovery under her negligent

misrepresentation and negligent construction, maintenance and

repair causes of action is limited solely to economic damages,

i.e., 'benefit of the bargain' damages."); State Farm Fire & Cas.

Co. v. Gwin, 658 So.2d 426, (Ala. 1995) ("We must conclude that

any alleged misrepresentations made by [the sellers] did not

<u>cause</u> the property damage of which the [buyers] complaint."
(emphasis in original)); <u>Dixon v. Nat'l Am. Ins. Co.</u>, 411 N.W.2d
32, 33-34 (Minn. 1987) ("The [buyers'] claims [for breach of
warranty, negligent or intentional fraudulent misrepresentation,
and deceptive or fraudulent trade practices are] not for property
damage . . . .   The damage was to the [buyers] and their interest
in the property, not to the property itself and there is no
coverage under the policy terms."); <u>Everson v. Lorenz</u>, 695 N.W.2d
298, 310 (Wis. 2005) ("[W]e conclude that the 'property damage'
in this case was caused by the preexisting 100-year flood plain,
not by any presale misrepresentation of [the seller].").

        As in <u>Safeco Ins. Co.</u>, 915 F.3d at 502, and the other
cases cited above, the Kozials' claims do not expose the Scotts
to liability for any damage to tangible property.   Rather, the
Kozials are claiming <u>economic loss</u> relating to the property's
value and the Kozials' interest in the property.   Although the
Kozials allege that the home did suffer water damage that made
portions of the house uninhabitable, they do not assert that the
Scotts' nondisclosure caused that water damage.   Further, because
the Kozials are complaining that the Scotts failed to disclose
the water damage after it occurred, the Kozials are alleging that
the water damage occurred before the Scotts' nondisclosure.
Thus, the nondisclosure could not have caused the water damage.
The economic loss for which the Kozials are suing the Scotts is

not covered by either Policy.  Accordingly, even if the court construed the nondisclosure to be an "accident," the nondisclosure failed to cause any "property damage" covered by the Policies.

The Policies also cover occurrences or losses that result in bodily injury.  Ex. A (attached to Motion) at 6 (Definitions), Ex. A (attached to Opp.) at 2 (Definitions). Although the Homeowner's Policy expressly excludes emotional distress from its definition of "bodily injury," Ex. A (attached to Motion) at 5 (Definitions), the Umbrella Policy defines "bodily injury" to include "emotional distress."  Ex. A (attached to Opp.) at 2 (Definitions).  However, as discussed above, because the emotional distress claims arise from the contractual relationship between the Kozials and the Scotts, those claims are not covered.  See Burlington, 383 F.3d at 955; WDC Venture, 938 F. Supp. at 679.  In other words, injury that derives from an uncovered claim is not rendered covered simply by being derivative.

D.   The Owned-Property Exclusion Is Inapplicable.

State Farm alternatively argues that "the policies' 'owned property' exclusions unambiguously preclude coverage for the Kozials' underlying claims" because "the Kozials' alleged damages all occurred prior to the closing of the transaction, and thus when the Scotts still owned the insured property."  Motion

27

at 19-20 (emphases in original).  The Scotts contend that the exclusions do not apply, as the Kozials' claims "arose after the sale closed on February 14, 2004 and the Scotts were no longer the owners of the residence."  Opp. at 17.  The court agrees that the exclusions are inapplicable.

The Homeowner's Policy excludes coverage for "**property damage** to property currently owned by any **insured**," and the Umbrella Policy excludes coverage for "**property damage** to . . . your own property."  Ex. A (attached to Motion) at 21 (Section II - Exclusions), Ex. A (attached to Opp.) at 10 (Exclusions).  The exclusions are inapplicable to the Kozials claims, as the Kozials do not seek recovery for "property damage," but rather for economic loss resulting from the nondisclosure.

Additionally, even assuming that the Kozials' prayer for economic loss constitutes "property damage" under the Policies, the Homeowner's Policy provides that only property damage occurring "during the policy period" is covered.  Ex. A (attached to Motion) at 6 (Definitions).  The "policy period" for the Homeowner's Policy apparently ended when the Scotts ceased to own the house.  See, e.g., Scott Declaration ¶ 10 (declaring that the Homeowner's Policy was in effect "until the closing date for the sale of our residence").  The Kozials were not damaged until they suffered economic loss, which occurred after the sale closed

28

and the Scotts no longer owned the property.  The owned-property exclusions simply do not apply in this case.

V.        CONCLUSION.

In light of the foregoing, the court grants State Farm's motion for summary judgment.  Under the Policies' clear language, State Farm owes no duty under the Homeowner's Policy or the Umbrella Policy to defend or indemnify the Scotts in the state court action.  The Clerk of Court is directed to enter judgment in favor of State Farm and to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 24, 2007.


_____
Susan Oki Mollway
United States District Judge




**State Farm Fire & Casualty Company v. John Scott and Tamara Scott**, Civ. No. 06-00119 SOM/BMK; ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.